Horst Lichtenberg v. Commissioner.
Lichtenberg v. Commissioner
Docket No. 1436-65.
United States Tax Court
T.C. Memo 1966-189; 1966 Tax Ct. Memo LEXIS 95; 25 T.C.M. (CCH) 969; T.C.M. (RIA) 66189; August 23, 1966
*95 Upon the facts, held: That petitioner and his mother purchased property and operated a tourist home business on the property as a joint venture; and that petitioner is entitled to deduct 50 percent of the loss from the operation of the business in the taxable year, the amount of the loss to be recomputed under Rule 50, on the basis of the Court's findings. Henry J. Gelles, Box 590, Lake Placid, N. Y., for the petitioner. Kennard I. Mandell, for the respondent. HARRON *96 Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for the taxable year 1962 in the amount of $900.91. The deficiency is the result of disallowance of a deduction of a claimed loss from the operation of a joint venture in the amount of $5,530.70. The ultimate question is whether the petitioner is entitled to a deduction for his share of a loss sustained by an alleged joint venture, and the amount of the loss. Findings of Fact The stipulated facts are found as stipulated and are incorporated herein by this reference. Petitioner filed an individual income tax return for 1962 with the district director of internal revenue at Albany, New York. He is a resident of the village of Keene Valley, New York. Elsa Lichtenberg, petitioner's mother, agreed on September 26, 1956, to purchase a house and lot from Gertrude L. Meehan for $4,000, located on Cascade Road, Lake Placid, New York. The house, built in the early 1900's, had been vacant for 17 years and needed extensive repairs. The petitioner and his mother agreed orally, at this time, to purchase the property as a joint venture for the purpose of remodelling the house and *97 using it as a tourist home in a joint venture business consisting of renting rooms to tourists. Petitioner and his mother orally agreed that each would advance money for the purchase and remodelling; that petitioner, himself, would do a great deal of the remodelling work; and that each would have a 50 percent interest in the joint venture. The property was not purchased for the purpose of using it as a residence of either petitioner or his mother, and it was never used as a residence. The remodelling work was done gradually from 1956 until the summer of 1962. On July 1, 1962, the house was opened for rental to tourists. A sign was put up on the property indicating that it was a tourist home, called "Olympic Heights." It was open to tourists until the end of November, 1962, the end of the tourist season. Because of competition with two modern motels nearby, the total amount of rents received during the months of July through November was only $40. After 1962, a larger amount of rent receipts was realized. Even though the operation was unsuccessful in 1962, the petitioner and his mother actually carried on a business of operating the property as a tourist home in 1962. The purchase *98 price of the property, $4,000, was paid by Elsa and petitioner. Exclusive of interest, Elsa paid $1,100 (in 1956 and 1957) and petitioner paid $2,900 (in 1958, 1959, and 1960). It is stipulated that a proper allocation of the cost of the property is $500 for the land, and $3,500 for the house. It is stipulated that the cost of the capital improvements to the house (the costs of remodelling and repairs) was $2,988.63 during 1956 through 1961, and $2,520 in 1962, or a total amount of $5,508.63; and that the adjusted cost basis of the house in 1962, exclusive of some additional expenditures in 1962, is $9,008.63. It is stipulated that the cost of the furniture purchased for the tourist home is $422.82, consisting of purchases during 1956-1961 in the amount of $276.07, and purchase in 1962 of $146.75. This was not for personal use. In 1962, petitioner spent at least $1,880.61 for additional work on the house, and materials. Roof work cost $1,035, and repairs of furnace ducts cost $600; a total of $1,635. These expenditures were for capital improvements. Of the balance, $245.61, the cost of work representing capital improvements was $122.80, and the cost of ordinary repairs was *99 $122.81. Title to the property was at first held in the name of petitioner's mother, to whom the property was conveyed by deed, by Meehan, on August 5, 1960. In December, 1962, the property was conveyed to Elsa and petitioner as tenants in common by a deed that was recorded on December 26, 1962. However, petitioner had an equitable interest in the property based upon his payment of $2,900 of the purchase price and his payments for some of the capital improvements to the house. Ultimate Findings of Fact 1. The Cascade Road property was purchased by petitioner and his mother as a joint venture; and they operated a joint venture business in 1962 on the property consisting of renting rooms to tourists. 2. Petitioner and his mother, each, had a 50 percent interest in the joint venture from its inception in 1956 through 1962, and thereafter. 3. The expenditures for capital improvements to the house during the years 1956 through 1962, in the total amount of $7,266.43, were the expenditures of petitioner and his mother in their joint venture. 4. The adjusted cost basis of the house in 1962 amounted to $10,766.43, consisting of the allocated cost of $3,500, plus the total cost *100 of the capital improvements in the amount of $7,266.43. Opinion The issues for decision present questions of fact under which the petitioner had the burden of proof. It has been found and it is held that the petitioner and his mother purchased, held, improved, and operated the property as a joint venture in which each had a 50 percent interest. The evidence is convincing that there was an oral joint venture agreement between petitioner and his mother. In 1962, their first season of operations, they carried on a tourist home business on the property as a joint venture. The business was operated at a loss. The next question is the amount of the loss. Petitioner now admits that he erred in computing the amount of the gross loss as $5,570.70, and the net amount of the loss as $5,530.70, in reporting the loss in Part IV of his individual income tax return. It is concluded that he also erred in taking a deduction in the total amount of the loss. He is entitled to deduct only 50 percent of the loss because he has only a 50 percent interest in the joint venture. Petitioner overstated in his return the gross amount of the loss because he admittedly computed the annual allowance for *101 the depreciation of the building in an excessive amount, namely $3,400. His error was due to ignorance and his failure to obtain competent assistance in the preparation of his income tax return; it was not an intentional error. The problem of determining the gross amount of the loss of the joint venture in 1962 now presents the following questions: What is the correct amount of the allowance in 1962 for the depreciation of the building? What is the correct amount of the allowance in 1962 for depreciation of the furniture used in the joint venture? Was all or a part of the joint venture expenditures in 1962 in the total amount of $1,880.61 for ordinary repairs which represent a deductible expense? If part of those expenditures were not for deductible repairs, what is the amount spent for capital improvements, and what amount was spent for ordinary repairs? Petitioner has abandoned his original claim that there were other deductible expenses of the joint venture in the amount of $290.09. He now limits his claim for deductible expenses of the joint venture to $1,880.61. Respondent does not contest the amount of the expenses and agrees that they were incurred and paid. The findings *102 dispose of this question. Some of the claimed deduction is held to be capital expense because the evidence does not establish that some expenditures were for ordinary, deductible repairs. Under the rule of , an allocation of a small amount, $122.81, has been made, resolving some doubt in petitioner's favor, holding that amount to have been spent for ordinary repairs. The joint venture is entitled to an expense deduction of only $122.81. The balance of the expenditure in issue, $1,757.80, was for capital improvements to the house. Under the stipulation of the parties and the findings here, the adjusted basis of the house in 1962 was $10,766.43. Under Rule 50, the parties will compute the amount of the allowable deduction for the annual depreciation of the house for 1962, allowable to the joint venture. It appears that there is no dispute about the period of the useful life of the house for the purpose of depreciation. The parties will compute, also, the amount of the allowable, annual depreciation of the furniture used in the joint venture, which had a stipulated cost of $422.82. There appears to be no dispute about the useful life of *103 the furniture for the purpose of depreciation. The loss of the joint venture in 1962 is represented by the difference between income in the amount of $40 and the deductions allowable to the joint venture. The claimed deductions consist only of the allowable deductions for the depreciation of the building and the furniture, and for deductible expenses (which deduction is here determined to be $122.81). Since the parties will compute under Rule 50 the respective amounts of the allowable deductions for the depreciation of the house (x), and for the depreciation of the furniture (y), the total amount of the deductions allowable to the joint venture for 1962 (z) will be the sum of x, plus y, plus $122.81; and the amount of the loss of the joint venture in 1962 will be z, less $40 of rent receipts. Petitioner, as one of the members of the joint venture, is entitled to a deduction of 50 percent of the joint venture loss, as recomputed by the parties under an agreed Rule 50 computation. His interest in the joint venture is a 50 percent interest. On his return for 1962, petitioner computed the loss of the joint venture to be the net amount of $5,530.70. He deducted all of that amount from *104 his gross income. He erred in so doing. He is entitled to a deduction of only one-half of the loss of the joint venture, as stated above. At the trial, petitioner conceded that his original computation in his return of the depreciation of the building for 1962 (which he then claimed was $3,400) was mistakenly computed (due to his ignorance) and, consequently, was excessive. At the trial, petitioner claimed that the amounts of the depreciation of the house and of the furniture are $599 and $309, respectively. Under Rule 50, the parties will agree to the correct amounts of the depreciation for 1962 of both types of property as stated before). The point noted here is that at the trial, the petitioner claimed that the loss of the joint venture in 1962 was the net amount of $2,748.61, rather than the net amount of $5,530.70. His claim at the trial of the amount of the joint venture loss was as follows: Depreciation of house
$ 599.00
Depreciation of furniture
309.00
Deductible repairs expense
1,880.61
$2,788.61
Less: Rent receipts
40.00
$2,748.61 Since it is held here that most of the expenditures of $1,880.61 constituted capital improvement expense ($1,757.80), *105 and only $122.81 constituted deductible repairs expense, it follows that petitioner's revised computation of the claimed loss of the joint venture is excessive to the extent of at least $1,757.80. Under the findings here, the joint venture loss for 1962 is $122.81, less $40, or $82.81, plus the amounts of the deductions for depreciation of the house and the furniture, to be agreed upon by the parties under Rule 50. Petitioner claims that a return of the joint venture for 1962, Form 1065, Partnership Return of Income, was filed in 1963. Evidently such return was attached to his letter protesting the agent's proposed determination of a deficiency in petitioner's individual income tax liability. But the joint venture return may not have been "filed", as a tax return, because it was attached to the protest letter and, therefore, may not have been actually "filed" with the district director of internal revenue in Albany. Petitioner's testimony that he "filed" a return of the joint venture for 1962 is accepted as correct. However, petitioner (through his attorney) should make certain that the 1962 joint venture return is properly filed with the district director of internal revenue in *106 Albany, and in the future he should obtain the timely assistance of his attorney who, in this instance, was belatedly engaged after petitioner, due to lack of knowledge of the procedures of the respondent and of the Internal Revenue Code, made many errors which otherwise would not have been made. The parties did not file briefs, but their respective contentions are set forth in the record. The following pertains to applicable principles which provide the basis for sustaining some of petitioner's claims: Section 761 of the Code, includes "joint venture" in the definition of "partnership", for tax purposes. The evidence establishes that the property in question was purchased by petitioner and his mother, and remodelled, as the property of the joint venture, and that in 1962 a joint venture business was conducted on the property. At first, petitioner's mother was the holder-of-record of the title thereto. In December, 1962, title was held by petitioner and his mother as tenants in common. However, the evidence shows that petitioner had an equitable interest in the property, represented by his payment of part of the purchase price and part of the cost of the capital improvements. *107 Also, the evidence establishes that the property originally was purchased by petitioner and his mother as the property of a joint venture. It is recognized that the holding of property as tenants in common does not create a joint venture or a partnership. See . However, on its facts, this case is distinguishable from the Hahn case. One applicable principle is that where ownership of an equitable interest in property is proved, it is the actual equitable interest, rather than the way the title to the property is held, that is given effect for tax purposes. See Mertens, Law of Federal Income Taxation, Vol. 4, section 23.06; and Vol. 6, section 35.05; and . Moreover, it is established here that petitioner and his mother bought the property as joint venturers, in a joint venture. It is held that respondent erred in failing to recognize that the property was bought and held by petitioner and his mother in a joint venture, and that a joint venture business was conducted on the property in 1962. Decision will be entered under Rule 50.